PENWELL, RESPONDENT, v. FLICKINGER ET AL., APPELLANTS.

(No. 3,136.)

(Submitted January 8, 1913.   Decided January 21, 1913.)

[129 Pac. 323.]

*Payment of Debt by Other Than Debtor—Extinguishment—Subsequent Assignment—Effect.*

Payment of Debt by Other Than Debtor—Effect as to Creditor.
   1.   Payment of a debt by one who, though under no legal obligation to discharge it, did so, without authorization, subsequent ratification or promise to repay by the debtor, and in the absence of any assignment of the demand from the creditor to such person at the time of payment or an understanding that it should be assigned or kept on foot for his benefit, extinguished the debt as to the creditor.

Same—Subsequent Assignment—Effect.
   2.   A creditor whose demand against another had been extinguished by the voluntary payment thereof by a third person had not any claim based thereon which he could assign; hence such person took nothing by virtue of a written assignment thereof, executed five months after payment and four months after commencement of suit to recover thereon, which gave him a cause of action against the debtor.

Payment—Failure to Plead—Evidence—Availability to Defendant.
   3.   Where the fact of payment was disclosed in the evidence, though not pleaded by the defendants in an action to recover under an assignment, the defense was as available to them as if it had been specially pleaded.

*Appeal from District Court, Lewis and Clark County; J. M. Clements, Judge.*

ACTION by Lewis Penwell against C. M. Flickinger and W. R. Strong, copartners doing business under the firm name and style of Flickinger & Strong.   From a judgment in favor of plaintiff, defendants appeal.   Reversed and remanded.

*Mr. C. A. Spaulding,* for Appellants, submitted a brief and argued the cause orally.

A voluntary payment of the debt of another by a third person, not subsequently ratified, cannot be made the basis of an action against the original debtor to recover the amount so voluntarily paid.

It is elementary law that no man can be made a debtor for money paid by another unless it was paid at his request, or the

payor was under some legal obligation himself to make the payment. (*Donovan-McCormick Co. v. Sparr,* 34 Mont. 237, 85 Pac. 1029; *McGee* v. *City of San Jose,* 68 Cal. 91, 8 Pac. 641; *Homestead Co.* v. *Valley R. R.,* 17 Wall. (U. S.) 153, 21 L. Ed. 622; *Watkins (Allen's Admx.)* v. *Richmond College,* 41 Mo. 302; *Irvine* v. *Angus,* 93 Fed. 629, 35 C. C. A. 501; *Neely* v. *Jones,* 16 W. Va. 625, 37 Am. Rep. 794; *Boyer* v. *Richardson,* 52 Neb. 156, 71 N. W. 981; *Durant* v. *Rogers,* 71 Ill. 121; *Smith* v. *Husted,* 28 Ind. App. 168, 62 N. E. 454; *Huddleston* v. *Washington,* 136 Cal. 519, 69 Pac. 146; *Mitchell* v. *Danielson,* 38 Colo. 63, 89 Pac. 823; *Gray* v. *Herman,* 75 Wis. 453, 6 L. R. A. 691, 44 N. W. 248.)

The real question presented by this appeal is whether one holding a claim against another, which claim is paid in full by a volunteer, can some six months thereafter execute to such volunteer an assignment of such claim and an action be maintained against the original debtor founded upon such assignment. We insist that this cannot be done, and that this court has directly so held in the case of *Tanner* v. *Bowen,* 34 Mont. 121, 115 Am. St. Rep. 529, 9 Ann. Cas. 517, 7 L. R. A., n. s., 534, 85 Pac. 876. The principle there announced is one sustained by a practical unanimity of judicial decision, as the following authorities demonstrate: "The payment of a debt by a person not legally responsible for it is a satisfaction of the debt, if the money is accepted for that purpose. And so here the payment on the one part and the acceptance on the other of the sum of $500 operated *pro tanto* as a satisfaction of the judgment." (*Martin* v. *Quinn,* 37 Cal. 55; *Smith* v. *Husted,* 28 Ind. App. 168, 62 N. E. 454; *Moran* v. *Abbey,* 63 Cal. 56; *Leavitt* v. *Morrow,* 6 Ohio St. 72, 67 Am. Dec. 334; *Crumlish's Admrs.* v. *Central Imp. Co.,* 38 W. Va. 390, 45 Am. St. Rep. 872, 23 L. R. A. 120, 18 S. E. 456.) In the case last cited the supreme court of West Virginia held that payment by a stranger to the holder of a judgment of the amount thereof operated to satisfy such judgment, so that no action could be thereafter maintained thereon by such holder. This being the rule, and the holder being unable to maintain an

action on such judgment, assuredly the assignee of the holder, possessing no greater rights than his assignor, likewise could not maintain such action. And in the case at bar, if the Beaverhead Ranch Company, after having been paid in full by respondent its claim against appellants, could not have maintained an action against them, then respondent, as the assignee of the Beaverhead Ranch Company, could not maintain such an action.

An inspection of the complaint discloses that it is constructed on the sole theory that respondent could recover upon a cause of action assigned by the Beaverhead Ranch Company to him; it states but a single cause of action. To state a cause of action for moneys laid out and expended for the benefit of appellants a wholly different complaint is necessary. One indispensable allegation of such a complaint is that of a request on the part of appellants that such expenditure be made. (*Donovan-Mc-Cormick Co.* v. *Sparr, supra; Moulton* v. *Loux,* 52 Cal. 81; 2 Greenleaf on Evidence, 93.)

It was insisted by counsel for respondent in the court below that respondent was entitled to be subrogated to the rights of the company in its claim against appellants, and therefore this action was maintainable. But the doctrine of subrogation is not available to respondent under the facts adduced on the trial. In the case of *Contoocook Fire Precinct* v. *Town of Hopkinton,* 71 N. H. 574, 53 Atl. 797, the supreme court of New Hampshire stated the rule as follows: "The doctrine of subrogation is not applied for the mere stranger or volunteer who has paid the debt of another, without any assignment or agreement for subrogation, being under no legal obligation to make the payment, and not being compelled to do so for the preservation of any rights or property of his own. * * * The doctrine of subrogation is a pure, unmixed equity, and from its very nature could not have been intended for the relief of those who were in a condition and at liberty to elect whether they would or would not be bound."

Lastly, it was insisted by counsel for respondent in the court below that the condition of the pleadings would not permit appellants availing themselves of the fact that any claim of the

Beaverhead Ranch Company against them had become extinguished by a voluntary payment thereof by respondent. It is true, speaking generally, that payment is an affirmative defense and must be specially pleaded; but where the fact of payment develops on the trial by testimony elicited without objection, as was the fact in the case at bar, appellants are entitled to the benefit thereof. (*Tanner* v. *Bowen,* 34 Mont. 121, 115 Am. St. Rep. 529, 9 Ann. Cas. 517, 7 L. R. A., n. s., 534, 85 Pac. 876; *Capital Lumber Co.* v. *Barth,* 33 Mont. 94, 81 Pac. 994; *Prosser* v. *Montana Cent. Ry. Co.,* 17 Mont. 388, 30 L. R. A. 814, 43 Pac. 81; *Peck* v. *Goodberlett,* 109 N. Y. 180, 16 N. E. 350; *Hawn* v. *Seventy-six etc. Water Co.,* 74 Cal. 418, 16 Pac. 196; *England* v. *Gripon,* 15 La. Ann. 304; *Donaldson* v. *Carmichael,* 102 Ga. 40, 29 S. E. 135; *Gardner* v. *Buckbee,* 3 Cow. (N. Y.) 120, 15 Am. Dec. 256; *Bunnell* v. *Rio Grande etc. Ry. Co.,* 13 Utah, 314, 44 Pac. 930.) These decisions proceed upon the theory that whenever a plaintiff discloses by his own proofs that he is not entitled to recover, it becomes the duty of the trial court to direct a verdict against him without regard to the condition of the pleadings.

*Messrs. Walsh & Nolan,* and *Messrs. Wight & Pew,* for Respondent, submitted a brief; *Mr. C. B. Nolan* and *Mr. Ira T. Wight* argued the cause orally.

Was respondent a volunteer? There is a rule of law that if A, without authority so to do, but as a stranger—as an officious meddler—pays a debt owing by B, he cannot recover from B unless B subsequently ratifies A's act. The reason and justice of the rule is plain. B's creditor may be satisfied to hold B's account, and when A simply offers payment, there is nothing to advise this creditor that A's object is to force himself upon B as a creditor. If A demands an assignment of the account, the original creditor is then advised of A's purpose, and if the creditor will give such an assignment, A's right of action against B is then well founded. In the case at bar, if Penwell had nothing to do with the Beaverhead Ranch Company and had nothing

to do with the transaction between appellants and that company, but had come to the company and paid it a debt owing to the company by appellants, we may concede that he would have no cause of action against the appellants for the money paid, unless he secured a valid assignment of the company's claim. The rule may be proper enough in the case of a real volunteer—in the case of an actual stranger; in the case of one who is really an officious meddler in the affairs of another—but the rule is by no means so narrow and restricted that because of it one primarily responsible and morally obligated is prevented from doing what is undoubtedly the honorable, conscientious and right thing for him to do. The law is not so shallow as to place a penalty upon what is right in favor of wrongdoers.

Appellants cite *Watkins (Allen's Admx.)* v. *Richmond College,* 41 Mo. 302, in which the general rule is laid down that where "a stranger," "unsolicited and purely officious," pays the debt of another, the defendant is not obligated to reimburse him. They also cite *Irvine* v. *Angus,* 93 Fed. 629, 35 C. C. A. 501, where it is said that "a volunteer is one who has paid the debts of another without request when he was not legally or morally bound so to do, and when he had no interest to protect in making such payment." We respectfully submit that the facts in this case preclude appellants' contention that respondent was a volunteer.

Appellants quote from *Martin* v. *Quinn,* 37 Cal. 55, as follows: "The payment of a debt by a person not legally responsible for it is a satisfaction of the debt if the money is accepted for that purpose." The law with reference to an accord and satisfaction is stated in 1 Cyc. 312, as follows: "Both the giving and acceptance in satisfaction are essential elements, and if they be lacking, there can be no accord and satisfaction." "In order that the act of the stranger operate as a satisfaction of the debt or demand, it must have been authorized by the debtor or subsequently ratified by him." (*Id.* 316.) Under this rule it is necessary for appellants, in order to avail themselves of the act of Mr. Penwell as a payment, either to have authorized him to

make the payment or to have subsequently ratified his making the same. In other words, before they can take advantage of a third person's act they must adopt it as their own. There is no such evidence in the record.

Appellants misunderstand the rule with reference to a volunteer. Their interpretation is that this is a rule whereby a debtor can escape his just obligations. As a matter of fact, the rule is simply to protect a debtor from interference with his affairs by a stranger. The debtor may repudiate the action of the stranger in assuming to pay his debts, but if he does this, it leaves him still owing the debt to the original creditor. When the original creditor sues him, if he pleads that the original creditor has been paid by this stranger, he thereby ratifies the stranger's act in making the payment and becomes liable to the stranger. The law simply protects the debtor as to who his creditor shall be, but does not relieve him from his debt.

MR. JUSTICE SANNER delivered the opinion of the court.

The original complaint in this action was filed on September 16, 1910. Issue was joined, but afterward, and on January 26, 1911, an "amended and supplemental complaint" was filed, alleging, in substance, that in June, 1910, defendants agreed to sell to the Beaverhead Ranch Company, a corporation, a certain automobile, for which they were fully paid in the sum of $956.50; that they never delivered the automobile and never returned the purchase price or any part of it, though demanded so to do; that on August 6, 1910, plaintiff paid said Beaverhead Ranch Company the full sum of $956.50, and said company "did heretofore duly make, execute and deliver to the plaintiff herein a full and complete transfer and assignment of its claims and demands against the defendants herein growing out of the transactions hereinbefore alleged, and plaintiff now is the owner and holder of said claims and demands." The answer admits all the allegations of the amended and supplemental complaint, except it alleges that the defendants sold the machine to the company, through the plaintiff as its agent and representative; denies any demand by the company for a return of

the money paid; denies nondelivery of the car, and disclaims any knowledge of plaintiff's payment to the company or its assignment to him. A reply was filed denying the affirmative matters set forth in the answer. The case was tried to the court sitting with a jury. There was a verdict and judgment for the respondent for the full amount claimed, and from that judgment this appeal is taken. The errors assigned are the giving and refusal of certain instructions, including, among those refused, a direction to find for the appellants; and the question presented here is whether upon the case made the respondent was entitled to recover.

So much of the evidence as was deemed necessary to raise the matters of law involved is before us by bill of exceptions incorporated in the record. This evidence tended to show the agreement as alleged between the Beaverhead Ranch Company and the appellants; the payment by the company to the appellants; their failure to deliver the car or to return the money notwithstanding demand; the payment by respondent to the company in August, 1910; the commencement of this action in September, 1910, and the company's assignment in January, 1911; also that respondent's act was without any request from the appellants and against the express dissent of one of them; that respondent was an officer of the company, sustained friendly relations with it, and did not like to see it lose any money on account of this transaction with appellants. Touching this matter the respondent himself testified: "I had represented to the Beaverhead Ranch Company that the thing to do was to buy this particular car from these particular people; I sort of stood sponsor for the whole transaction, and the Beaverhead Ranch Company had paid out over $900 and they had not got any car. They were out the money and I was largely responsible for it, I supposed. At any rate, I felt so, and I was naturally somewhat exercised about it, and of course I told defendant Flickinger very plainly how I felt about it. I will state that in the meantime the Beaverhead Ranch Company were out the money and did not have any car. I went to Butte and bought them a car, an Hupmobile, that cost $161 less than the car we bought

from Flickinger & Strong. I paid for that car out of my own pocket and gave the Beaverhead Ranch Company that car and $161, so that they were entirely reimbursed for all they were out. I was the only one that was out.''

That the respondent proceeded under a delicate and praiseworthy sense of business ethics may be granted; but that he was [1] under no legal obligation to make good the default of the appellants and that he did so without their authorization are facts patent upon the face of the record. Equally certain is it that there was no subsequent ratification or promise to repay, and there is not a suggestion in the record of any oral assignment of its claim from the company to the respondent when he made the payment, or of any understanding that it should be assigned or kept on foot for his benefit. Under such circumstances the general rule is that the payment extinguishes the debt, at least so far as the creditor is concerned. (30 Cyc. 1183, 1121; note to *Crumlish's Admr.* v. *Central Imp. Co.,* 23 L. R. A. 120; *Martin* v. *Quinn,* 37 Cal. 55.)

Now, the question here is not whether by the respondent's act [2] the debt became extinguished as to the debtor, but what did the respondent take by virtue of the assignment here pleaded? This assignment is a formal written instrument, given and dated nearly five months after the respondent's payment to the company and nearly four months after the commencement of this action, and it purported in consideration of $956.50, ''heretofore paid by Lewis Penwell,'' to assign to him such claims, demands or causes of action as the company then had by virtue of the premises. But if, when the payment was made, the obligation was extinguished so far as the company was concerned, it had not on January 4, 1911, any claims, demands or causes of action which it could assign, and the respondent took nothing by virtue of the assignment. (*Tanner* v. *Bowen,* 34 Mont. 121, 115 Am. St. Rep. 529, 9 Ann. Cas. 517, 7 L. R. A., n. s., 534, 85 Pac. 876; *Moran* v. *Abbey,* 63 Cal. 56; *Crystal* v. *Hutton,* 1 Cal. App. 251, 81 Pac. 1115.)

It is urged, however, that the record does not show that respondent ever intended to pay appellants' debt, or that the com-

pany ever accepted respondent's act as a discharge of appellants' obligation. We think otherwise. If the intention of the respondent or the company had been the one to relieve and the other to be relieved of an inconvenient situation due to the lack of a car when a car was needed, different and more obvious means would doubtless have been employed. But respondent not only bought the company a car, he also paid to it a sum of money equal to the difference between the cost of the car he bought and the one ordered from appellants, all of which the company received and kept; and thus, as he himself said, it was "entirely reimbursed."

Finally, it is contended that since the answer contains no affirmative plea of payment, the appellants should not be heard to say that respondent's act operated as a discharge. So far as the complaint disclosed, the action was on the assignment of a valid, existing claim, and the burden was on the respondent to sustain his action as laid. When the evidence disclosed, what [3] the complaint did not, that the assignment was made under circumstances destructive of its force as a cause of action, that situation became as available to appellants as though a special plea to the same effect had been interposed. (*Capital Lumber Co.* v. *Barth,* 33 Mont. 94, 81 Pac. 994; *Prosser* v. *Montana C. Ry. Co.,* 17 Mont. 372, 30 L. R. A. 814, 43 Pac. 81.)

The judgment is reversed and the cause remanded to the district court to enter judgment that the plaintiff take nothing and that defendants have their costs in this action incurred.

*Reversed and remanded.*

MR. CHIEF JUSTICE BRANTLY and MR. JUSTICE HOLLOWAY concur.