KENNEDY ᴇᴛ ᴀʟ., Tʀᴜsᴛᴇᴇs, Aᴘᴘᴇʟʟᴀɴᴛs, *v.* CONRAD ᴇᴛ
AL., Rᴇsᴘᴏɴᴅᴇɴᴛs.

(No. 6,870.)

(Submitted January 12, 1932.  Decided February 4, 1932.  Opinion on
Rehearing Filed April 9, 1932.)

[9 Pac. (2d) 1075.]

*Mr. T. H. MacDonald,* for Appellants, submitted a brief and argued the cause orally.

*Mr. E. K. Cheadle, Jr.,* for Respondents Marion W. and Ruth M. Edwards, submitted a brief and argued the cause orally.

358

*Mr. Fred W. Schmitz*, for Respondent E. W. Conrad, submitted a brief and argued the cause orally.

MR. JUSTICE ANGSTMAN delivered the opinion of the court.

Plaintiffs, as trustees of the East Chicago Oil Association, brought this action to recover $4,145, alleged to have been furnished by them to defendants. The action was tried to the court without a jury, resulting in judgment for defendants for costs. Plaintiffs appealed from the judgment, and contend that it is contrary to the law and the evidence.

Defendants contend that the complaint fails to state a cause of action, and that, if it does allege sufficient facts, the evidence does not sustain the allegations.

The complaint, in substance, alleges that in July, 1926, defendants were the owners of an oil and gas lease on eighty acres of described land in Toole county, under the terms of which they were obligated to drill a well for oil and gas, and were entitled to 82½ per cent. of all oil and gas in, under, and that might be produced therefrom; that plaintiffs acquired an overriding royalty interest therein; that after the well was drilled into production by defendants and gas in commercial quantities was found, the well required cleaning to prevent it from becoming valueless through caving, and to prevent defendants' rights from being forfeited for nonproduction of oil and gas in commercial quantities; that "for the

protection of the said lease and plaintiffs' interest therein, it was necessary that someone should furnish the money for the cleaning out and swabbing said well as aforesaid; that the defendants were unable to pay for the same or to perform the said labor, and that at the instance and request of the defendants Ruth M. Edwards and Marion W. Edwards, under the aforesaid circumstances, the plaintiffs advanced to defendants for the use and benefit of all of them the sum of forty-one hundred forty-five and $^{45}/_{100}$ dollars on or before the seventeenth day of December, 1927, that it was agreed between plaintiffs and defendants when said money was furnished * * * that the defendants would complete said well and would bring the same into production and pay the expense of protecting and repairing the said well and that when the said sum of forty-one hundred forty-five and $^{45}/_{100}$ dollars was paid by the plaintiffs as aforesaid it was the duty of the defendants to have furnished the said funds for the cleaning out, swabbing and repairing said well and that they failed so to do and that plaintiffs by reason of said failure of duty on the part of the defendants was [were] required to furnish the said sum to protect the interest of plaintiffs and defendants in the said well and lease and that in equity and good conscience the defendants should repay the said amount to the plaintiffs.''

A general demurrer to the complaint was filed, but the record does not disclose whether it was ever ruled upon. Answers were filed by defendants, but, in view of the questions raised by the appeal, their contents need not be inquired into. A bill of particulars itemizing the amounts claimed by plaintiffs was filed. Whether this was done voluntarily or upon demand does not appear. It set out the following items:

```
Feb. 1927........To various creditors of E. W. Conrad and
                 M. W. Edwards from sale of casing......$1101.45
6/24/27 .........To M. W. Edwards ........................  250.00
7/23/27 .........To M. W. Edwards ........................  450.00
11/9/27 .........To W. E. Burks .......................... 1300.00
12/19/27 ........To W. E. Burks ..........................  500.00
12/28/27 ........To W. E. Burks ..........................  440.00
                                          Total......$4041.45
```

At the opening of the trial defendants objected to the introduction of any evidence upon the ground that the complaint was insufficient for several stated reasons. The court announced that it would reserve its ruling. At the close of plaintiff's case a motion for nonsuit on the same grounds was made and the ruling reserved. The evidence shows: That John Broderick leased the land referred to in the complaint, with additional lands, to J. B. Peterson, trustee, in July, 1926, for the purpose of operating for oil and gas, the lessee agreeing to drill a hole to the Madison limestone formation, unless oil was found in commercial quantities at a lesser depth. Subsequently Peterson assigned all of his interest in that part of the land described in the complaint to E. W. Conrad and M. W. Edwards, reserving an overruling royalty, and under the terms of which assignment defendants Conrad and Edwards agreed to drill an oil or gas well to the Madison lime formation unless oil or gas in commercial quantities was found at a lesser depth. Plaintiffs, by assignment, acquired an overriding royalty in the oil and gas produced from the land.

The evidence relating to the item of $1,101.45 referred to in the bill of particulars is without substantial conflict. It is to the effect that plaintiffs permitted defendants to sell 1,600 feet of casing belonging to plaintiffs with which to raise money to pay labor claims and other debts of defendants, to prevent an attachment of the well by the workmen. The casing was sold and the money thus applied.

Defendant Edwards testified that the casing "was not sold at my request." However, the undisputed facts nullify the naked conclusion that he did not request the sale of the casing. He, also, testified that he was threatened with attachments and liens, and that he was "hard up to pay the labor." He said: "I had no money to pay my men with; that was the reason the casing was sold, to pay the men who pulled the casing; * * * the money received from the sale of the casing was applied to the debts that had been contracted by me and others in that well. * * * Mr. Peterson, Dr. Spear and myself agreed to sell the casing." He knew that

plaintiff Spear demanded 80 cents per foot for the casing and refused to sell it for 70 cents per foot. It was finally sold for 70 cents per foot. The labor claimants discounted their claims 7½ per cent., so that, on a sale of the casing at 70 cents per foot, substantially the same amount of claims were discharged from the proceeds as would have been if the casing had been sold for 80 cents, and the claimants made no discount of their claims. Peterson agreed to make up the difference to plaintiffs between the amount of claims actually paid off and what would have been paid off if the casing had brought 80 cents per foot. In the face of this evidence, the naked denial of defendant Edwards that the casing was sold at his request is unavailing. He at least authorized the transaction and knowingly accepted the benefits. From the admitted circumstances a request will be implied.

Defendants assert that there is no liability on their part to repay the money in the absence of an express agreement so to do. As to whether there was an agreement to repay, the evidence was conflicting. Defendant M. W. Edwards said: "I did not agree to pay Dr. Spear for the value of the casing."

Dr. Spear testified as follows: "I agreed that when the casing was pulled that they might sell the casing to pay the men and repay costs, and repay me for the casing at 80 cents per foot. Mr. Peterson was to handle the same, the reason being that Mr. Edwards was in such financial condition that if money was put into his hands, it might be attached, and in order to save the situation it was agreed that Mr. Peterson should handle the casing. * * * The agreement between Mr. Edwards, Peterson and myself was that I was to be repaid for the casing. I have not been repaid. I have gotten nothing."

Where there is a conflict in the evidence we will not disturb the finding of the trial court, if the conflict relates to a material matter in issue. But, under the circumstances here shown, it was not necessary to sustain plaintiffs' right of recovery that there be an express promise on the part of defendants to repay the value of the casing; for the rule is

that, "where one pays out money at the special instance and request of another, the law implies a promise on the part of the latter to repay it." (17 Cal. Jur. 587; and see 41 C. J. 12; *Couts* v. *Winston*, 153 Cal. 686, 96 Pac. 357; *Lee* v. *United States Fire Ins. Co.*, 55 Cal. App. 391, 203 Pac. 774; *Inhabitants of City of Biddeford* v. *Benoit*, 128 Me. 240, 147 Atl. 151; *Weaver* v. *Fickett*, 82 Cal. App. 116, 255 Pac. 257; *First National Bank of Fairbury* v. *Fairchild*, 118 Neb. 425, 225 N. W. 32; *Treece State Bank* v. *Wade*, (Mo. App.) 283 S. W. 714; *Phipps* v. *Fuqua*, (Tex. Civ. App.) 32 S. W. (2d) 660.)

The cases of *Watterson* v. *Hill*, 84 Mont. 549, 276 Pac. 948, and *Penwell* v. *Flickinger*, 46 Mont. 526, 129 Pac. 323, are not in conflict with this rule, for there, unlike the case here, the payments were made without the request or authorization of the real debtor. The importance of this distinction is pointed out in 17 Cal. Jur. 590. As to the defendant M. W. Edwards, the case, in so far as the proceeds of the casing are concerned, comes within the principles announced in the cases of *Smith* v. *Perham*, 33 Mont. 309, 83 Pac. 492, and *Donovan-McCormick Co.* v. *Sparr*, 34 Mont. 237, 85 Pac. 1029.

The defendant Conrad contends that under no theory can he be held liable for the money received from the sale of the casing, since he neither requested the money nor promised to repay it. But defendants Conrad and M. W. Edwards were joint lessees engaged in a joint adventure. (See exhaustive note in 63 A. L. R. 910, and particularly on page 917, as applicable to oil and gas leases.)

The general rule is that, "as to third persons who deal with a joint adventurer in good faith and without knowledge of any limitation upon his authority, the law presumes him to have been given power to bind his associates by such contracts as are reasonably necessary to carry on the business in which the joint adventurers are engaged, and they become liable on such contracts, notwithstanding they may have expressly agreed amongst themselves that they should not be liable." (33 C. J. 871.)

It is true that plaintiff Kennedy testified that "Mr. Conrad and Mr. Edwards were to drill the well. Mr. Edwards was to do the physical part of it. Conrad was to furnish the money. He was to get so much money to help pay for the drilling of the well." But this does not tend to show that plaintiffs had knowledge of any limitation of authority in Edwards to bind Conrad in securing money for the use of the joint enterprise. Here the proceeds from the casing were admittedly used to pay debts owing by the joint adventurers. Defendants Marion W. Edwards and E. W. Conrad are both liable to plaintiffs for the value of the casing as set forth in the bill of particulars.

There is no evidence in the record to show that defendant Ruth M. Edwards was interested in the lease in question, and therefore the court properly entered judgment in her favor.

The complaint alleges facts sufficient to bring the case within the principles of law above adverted to, and was therefore sufficient.

The evidence shows that the balance of the money referred to in the bill of particulars was advanced by the plaintiffs of their "own free will and accord," but that, as Dr. Spear testified, it was done "to have the well cleaned to protect our own interest." The well had been caving. Defendant Edwards said, in substance, that these advancements were made for the purpose of protecting the well and in an effort to bring it back as a commercial producer of gas. Prior to making the advancements plaintiffs had received notice from the owners of the land that the lease was about to be canceled if the well was not made a commercial one, and plaintiff Spear said: "In order to make it such, we put the money up."

Under the assignment of the royalty to plaintiffs they were entitled to a percentage of the oil and gas "delivered free of cost." The obligation to operate the leased premises was that of the lessees Conrad and M. W. Edwards. (*Sunburst Oil & Ref. Co.* v. *Callender*, 84 Mont. 178, 274 Pac. 834.) Plaintiffs base their right to recover these items upon the rule set forth in 41 C. J. 15, as follows: "One who, although not legally liable for a debt, will suffer a loss of his property if

the debt is not paid, may, on paying the debt, recover the money so paid from the one whose default in paying the debt placed on him the burden of such payment." With this general principle of law we agree. But from the record it appears that the plaintiffs agreed with defendants that they would pay their share of the cost of cleaning the well. The record supports the conclusion that, when there was threatened forfeiture of the lease, each party having an interest in the property agreed to pay the proportion of the cost of cleaning the well that his interest bore to the total interest. There was no arrangement, said plaintiff Spear, "from what it was to be repaid." In view of this evidence, we think the general rule above stated is not controlling here. It may be that defendants would have preferred to permit their interests to become forfeited rather than to continue with their operations, unless the plaintiffs agreed to aid them with advancements in proportion to their interest in the property. And, on the other hand, plaintiffs may have been willing to make these advancements without hope of their repayment by defendants, rather than permit their interest to lapse from the forfeiture of the lease. Since the parties made an agreement with respect to the emergency confronting them, and since the advancements were made pursuant to the agreement, plaintiffs, if they insisted upon the right of indemnity from defendants, should have made provision to that effect as a part of the agreement. The circumstances under which plaintiffs paid the money negative any expectation of its return from defendants or either of them. As to these items, the court properly entered judgment for defendants.

The judgment is therefore affirmed as to defendant Ruth M. Edwards. As to defendants Marion W. Edwards and E. W. Conrad the judgment is reversed and the cause remanded, with direction to enter judgment for plaintiffs for the sum specified in the bill of particulars as to the item for the casing, together with interest at the rate of 8 per cent. per annum from February 28, 1927. Plaintiffs shall recover their costs.

On rehearing the opinion promulgated on February 4, 1932, is withdrawn and this one substituted therefor.

MR. CHIEF JUSTICE CALLAWAY and ASSOCIATE JUSTICES GALEN, FORD and MATTHEWS concur.