STATE v. FLAKE MULLIS.

(Filed 2 May, 1951.)

**1. Criminal Law § 41e—**

The demeanor of a witness on the stand is always in evidence.

**2. Criminal Law § 50f—**

The solicitor has the right, within reasonable limits, to draw relevant inferences from and comment on the demeanor of a witness.

**3. Criminal Law § 53k—**

The trial court may properly give the contentions of the State upon relevant inferences reasonably deducible from the demeanor of a witness.

**4. Criminal Law § 81b—**

Where the record does not show to the contrary, it will be presumed that the procedure in the lower court was regular and free from error.

**5. Criminal Law § 78e (2)—**

Objection to the statement in the charge of a legitimate contention of the State cannot be raised for the first time on appeal, it being incumbent upon defendant in apt time to have challenged the contention or requested a counter contention on his own behalf.

**6. Rape § 25—**

Evidence *held* sufficient to support conviction of assault on a female with intent to commit rape.

APPEAL by defendant from *Phillips, J.*, and a jury, at January Term, 1951, of IREDELL.

Criminal prosecution tried upon an indictment charging the defendant with rape of one Mary Emily Mullis. When the case was called, the Solicitor announced in open court that the State would not ask for a verdict of guilty of rape but would ask for a verdict of guilty of an assault with intent to commit rape or guilty of an assault on a female.

The State's evidence discloses that at the time of the events which led to the indictment the prosecuting witness, Mary Emily Mullis, age thirty-three, was living with and keeping house for her father, Richard Mullis, at his home out in the country from Statesville. On Saturday afternoon, 5 November, 1949, at about 5:30 or 6:00 o'clock, the defendant went to the home of the prosecuting witness and her father. The defendant invited the father to go with him to get some beer. They left together and returned about an hour later. Both were drinking, and the defendant had a bottle of liquor, from which both continued to drink,—the father more freely than the defendant. Finally the father became highly intoxicated and was put to bed by the defendant. When the defendant returned to the living room he cut the light off, caught hold of the prosecuting witness, and threw her on a couch. He then, in spite of her protests and physical resistance, "half dragged and half carried" her to the bed and, as she put it, "He held me and took off my pants and got on top of me. I tried to pull his hands off me and let me alone, but he would not do it." The evidence further tends to show that the defendant partially penetrated the female organs of the prosecuting witness, but when she exclaimed that she was in great pain he desisted and did not complete the sexual act. She was carried to the hospital the next afternoon. She discharged blood from her female organs for a day and a half. Dr. F. L. Carpenter, who examined her at the hospital, testified that "she had a tear in the vaginal mucous membrane around the opening of the vagina, and the hymen was torn. It was a recent tear and was bleeding slightly. . . . The hymen is a membrane that goes across the opening of the vagina, and is usually torn at the first intercourse." The prosecuting witness told her brother and sister of the occurrence when they came to

the house the next afternoon. It was then that she was taken to the hospital.

The defendant went upon the witness stand and denied assaulting the prosecuting witness. He said that his intimacies with her resulted solely from her own advances and solicitation; that she first embraced him and then freely went to bed with him; that they remained in bed together until about 1:30 o'clock a.m.; that the reason he did not have intercourse with her was because he was too drunk; that other families lived nearby, —one within one hundred and fifty yards, and she made no outcry.

Verdict: Guilty of an assault on a female with intent to commit rape.

Judgment: Imprisonment in the State's prison for a term of not less than two and one-half years nor more than five years.

The defendant appeals, assigning errors.

*Attorney-General McMullan and Assistant Attorney-General Moody for the State.*

*J. G. Lewis and R. A. Hedrick for defendant, appellant.*

JOHNSON, J. The defendant places chief emphasis on a group of exceptions to the charge of the court,—all relating to the action of the court in giving, and in repeating, the State's contention that the prosecuting witness, Mary Emily Mullis, was a woman of subnormal mind. The defendant made no objection in the court below. The challenge comes for the first time on appeal. The defendant takes the position that the contention as given may be held for error notwithstanding the absence of objection in the court below, for that: (1) the contention is unsupported by testimony; and (2) it relates to a matter material to the issue. He cites and relies upon the decisions in *S. v. Buchanan,* 216 N.C. 34, 3 S.E. 2d 273, and *S. v. Wyont,* 218 N.C. 505, 11 S.E. 2d 473. The exceptions are without merit, and the authorities cited by the defendant are distinguishable.

An examination of the charge indicates that the court did not rest the challenged contention on any assumption that it was supported by testimony. The contention as given was expressly based upon the demeanor and appearance of the witness while upon the witness stand and in court. That this is so is made clear by the following preliminary statement of the trial judge: "The State insists and contends . . . that from her demeanor, her actions, appearance, and the way and manner in which she testified, that you should find that she was a woman not of normal mental faculties but had a backward and subnormal mind;" . . .

Here, the demeanor of the witness, as is always the case, was in evidence. Wigmore on Evidence, 3d Ed., Vol. III, Sec. 946, p. 498. See also *Herndon v. R. R.,* 162 N.C. 317, bot. p. 318, 78 S.E. 287; *Ferebee v.*

*R. R.,* 167 N.C. 290, top p. 296, 83 S.E. 360. Accordingly, the Solicitor had the right, within reasonable limits, to draw inferences from and comment on the demeanor of the prosecuting witness, Mary Emily Mullis. *Lamborn v. Hollingsworth,* 195 N.C. 350, p. 352, 142 S.E. 19. And this being so, it was within the province of the trial court to embody in its summation of contentions such relevant inferences as were reasonably deducible from the demeanor of the witness.

A study of the charge as a whole indicates that the contention of the State as to the mental condition of the prosecuting witness was submitted to the jury, not as a controlling, material phase of the case, but rather as subordinate, explanatory features : (1) as tending to show why the prosecuting witness did not make outcry; (2) as tending to corroborate her version of the assault, the contention being that, while she had mind and memory enough to relate the details of the assault as it occurred, she was without the necessary capacity and cunning to have fabricated a series of events as narrated by her; and (3) as tending to support the State's theory that the defendant, knowing of the weak mental condition of the prosecuting witness and believing that by reason thereof he could more easily overcome her will, went to her home with the fixed purpose of getting her father drunk and then having carnal knowledge of her.

There is nothing in the record indicating that the demeanor of the witness did not tend to support the contention as given. The record is silent on this point, and silence supports the presumption that the procedure in the court below was regular and free of error. *Claypoole v. McIntosh,* 182 N.C. 109, 108 S.E. 433; *Indemnity Co. v. Tanning Co.,* 187 N.C. 190, 121 S.E. 468. It was the defendant's right to have challenged the contention (*S. v. Baldwin,* 184 N.C. 789, 114 S.E. 837) and requested a counter contention on his behalf. *S. v. Sinodis,* 189 N.C. 565, 127 S.E. 601. His exceptions, first raised on appeal, may not be sustained. *S. v. Britt,* 225 N.C. 364, 34 S.E. 2d 408; *S. v. Wells,* 221 N.C. 144, 19 S.E. 2d 243.

We have examined the rest of the defendant's exceptions, including the challenge to the refusal of the court to dismiss the case as of nonsuit, and find them without merit. The evidence was sufficient to take the case to the jury.

In the trial below we find

No error.